UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RYAN THRONEBERRY,

                    Plaintiff,                              Case No. 1:21-cv-903

v.                                                         Honorable Sally J. Berens

KYLE BUTLER et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. §§ 1983 and 1985.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 8.)  Plaintiff previously sought and was granted leave to proceed *in forma pauperis*.  (ECF No. 10.)  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.  The Court will also deny Plaintiff's motion for a preliminary injunction.  (ECF No. 3.)

<u>**Discussion**</u>

**I.      Factual allegations**

Plaintiff is presently incarcerated at the Ionia County Jail in Ionia, Michigan.  Plaintiff sues Ionia County Prosecuting Attorney Kyle Butler, Lieutenant Jack Pieters, Sergeant Fredrick Straubel, Deputy Detective Chelsea Kasul, the Ionia County Sheriff's Department, Trooper Robert Dow II, Reed & Hoppes Towing and Recovery (R&H), and Bob Hoppes II.

Plaintiff alleges that on July 28, 2021, the Ionia County emergency dispatch system received calls from Plaintiff and Carrianne Marie Vaughn regarding a possible domestic assault. (ECF No. 1, PageID.4.)  Defendants Kasul and Pieters were dispatched to the Super 8 Motel on South State Street in Ionia.  (*Id.*, PageID.4–5.)  Defendants Dow and Straubel arrived shortly thereafter.  (*Id.*, PageID.5.)  Plaintiff, who was "visibly upset and in a manic state of mind," told Defendants Kasul, Pieters, and Straubel that Vaughn had assaulted him.  (*Id.*)  He avers that Vaughn verified this claim by her "own admission in both the 911 call and in her interview with Defendant Kasul." (*Id.*)  Plaintiff told the officers that he had not touched Vaughn.  (*Id.*, PageID.6.)

Defendant Kasul interviewed Vaughn, who stated that Plaintiff had "punched her in the spine with enough force to knock her to the ground."  (*Id.*)  Vaughn also noted that she was the aggressor and had started the dispute by slapping Plaintiff.  (*Id.*)  Defendant Pieters interviewed Gordon Skidmore, who had been present during the incident.  (*Id.*)  Plaintiff alleges that "there is no recording of this interview, nor was there a written statement of G. Skidmore." (*Id.*)  According to Plaintiff, Skidmore told him, in a recorded conversation, that he had told the officers that Vaughn slapped Plaintiff, and that Plaintiff "had lost his balance and fell." (*Id.*)  Skidmore also stated that he had given false testimony at Plaintiff's preliminary examination because Defendant Butler, the prosecuting attorney, "threatened to have Mr. Skidmore arrested if he refused to go along with Mr. Butler's narrative of the events in question." (*Id.*, PageID.7.)

Plaintiff was arrested for domestic assault; Vaughn was never arrested or charged.  (*Id.*) On August 23, 2021, Plaintiff appeared in court for his preliminary hearing.  (*Id.*)  He avers that during the hearing, Vaughn "admitted under oath to assaulting [Plaintiff] and to being the aggressor."  (*Id.*)  Defendant Kasul testified that Plaintiff had been arrested because his statement denying that he had touched Vaughn contradicted statements made by Vaughn and Skidmore that Plaintiff had punched Vaughn in the back.  (*Id.*, PageID.7–8.)  When asked, Defendant Butler refused to provide information as to why Vaughn had not been arrested or charged after admitting that she had assaulted Plaintiff.  (*Id.*, PageID.8.)

After Plaintiff was detained, Vaughn "fraudulently obtained [his] [']02 Trailblazer by pretending to be his significant other, along with all the property inside, valued in excess of $15,000.00."  (*Id.*)  Plaintiff reported the property stolen to Defendant Kasul on September 11, 2021.  (*Id.*)  Defendant Kasul interviewed Vaughn, who admitted taking the property, but alleged that a man named Jesse had taken the vehicle and property to store for Plaintiff.  (*Id.*, PageID.9.) Defendant Kasul asked Plaintiff about Jesse, and Plaintiff provided contact information for a Jesse Alan Livingston, as well as the location and description of Livingston's truck.  (*Id.*)  Plaintiff told Defendant Kasul that Vaughn had no authorization to do anything with his property, and that he had authorized only his mother and significant other, Melisa Rogers, to handle his affairs.  (*Id.*, PageID.9–10.)  Plaintiff asked Defendant Kasul to have "all parties involved arrested and prosecuted to the fullest extent of the law."  (*Id.*, PageID.10.)

Plaintiff avers that a month passed, during which time he tried to contact Defendant Kasul about his property on three occasions with no response.  (*Id.*)  On October 14, 2021, Defendant Kasul informed Plaintiff that his vehicle had been recovered, but that she had made a call to have it impounded at Defendant R&H, owned by Defendant Hoppes.  (*Id.*, PageID.10–11.)  Plaintiff

alleges that there has been "ongoing animosity" between him and Defendants Hoppes and R&H since May of 2021, because Plaintiff started refusing service to their drivers in response to their refusal to "move a car that Plaintiff had purchased." (*Id.*, PageID.11.) According to Plaintiff, these Defendants refused to release his vehicle unless he produced a title in his name, which Plaintiff claims is impossible because he is detained and never had a chance to change over the title information. (*Id.*, PageID.12.) Plaintiff avers that Defendant Kasul had no reason to impound the vehicle because he "made it very clear he wanted all his property turned over to Melisa Rogers, his longtime significant other." (*Id.*)

Based on the foregoing, Plaintiff asserts that Defendants conspired to deprive him of his rights, in violation of 42 U.S.C. § 1985. (*Id.*, PageID.13.) He also avers that Defendants, especially Defendant Butler, violated his First Amendment right to petition for redress of grievances and his Fourteenth Amendment equal protection rights. (*Id.*) Plaintiff further argues that Defendants violated his Fourteenth Amendment due process rights by depriving him of his property. (*Id.*, PageID.13–14.) Plaintiff seeks declaratory relief, as well as compensatory, nominal, and punitive damages. (*Id.*, PageID.14.) He also seeks injunctive relief in the form of an order directing Defendants to provide him "access to the same resources an attorney would have, and a minimum of access to law library material for 8 hours per week." (*Id.*, PageID.15.) Plaintiff reiterates his request for injunctive relief in his motion for a preliminary injunction, and also requests: (1) access to a telephone; (2) to be free from retaliation; and (3) to be provided paper to draft legal documents. (ECF No. 3.)

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a

complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A.      **Claim Pursuant to 42 U.S.C. § 1985**

As noted *supra*, Plaintiff avers that Defendants conspired to violate his rights, in violation of 42 U.S.C. § 1985. Plaintiff does not articulate under which subsection of Section 1985 he seeks relief, but for the reasons set forth below, his complaint fails to state a claim under any of Section 1985's provisions.

As an initial matter, subsections (1) and (2) of Section 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties,

witnesses, or jurors in federal court proceedings.  *See* 42 U.S.C. § 1985(2).  The second clause of subsection (2) prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights, *see id.*, and subsection (3) prohibits conspiracies to deprive individuals of their equal protection rights, *see* 42 U.S.C. § 1985(3).  Nevertheless, under both clauses, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  Here, Plaintiff appears to vaguely suggest that the alleged conspiracy was motivated by his gender.  *See Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994).  Nevertheless, while Plaintiff alleges that Defendants worked together, his complaint is devoid of facts suggesting that the Defendants overtly agreed to violate his equal protection rights.  *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (noting that a plaintiff must set forth facts alleging that defendants agreed to violate the plaintiff's rights and committed an overt act in furtherance of that agreement).  Plaintiff's conclusory allegations are insufficient to maintain his conspiracy claim against Defendants.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) (noting that "conspiracy claims must be pled with some degree of specificity" and that "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim").  The Court, therefore, will dismiss Plaintiff's claim pursuant to Section 1985.

### B.     Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because Section 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Defendants Hoppes and R&H

Plaintiff has sued R&H and its owner, Hoppes.  The Court must first determine whether Plaintiff has properly named these Defendants as parties to his Section 1983 claims.

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests.  The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58.  Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution."  *NBC, Inc. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

170 (1970).   Finally, the public function test covers private actors performing functions

"traditionally the exclusive prerogative of the State."  *Jackson*, 419 U.S. at 353; *accord West*, 487

U.S. at 49–50.  *See generally*, *Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff fails to plausibly allege that Defendants Hoppes and R&H acted under color of

state law.  These Defendants are not public officials.  The only conduct attributable to these

Defendants is that they are the ones holding Plaintiff's vehicle in impound and have refused to

release it unless Plaintiff provides a valid title in his name.  (ECF No. 1, PageID.12.)   While

Plaintiff avers that these Defendants have a contract with the Ionia County Sheriff's Office (*id.*,

PageID.11), acts of private contractors "do not become acts of the government by reason of their

significant or even total engagement in performing public contracts." *See Rendell-Baker v. Kohn*,

457 U.S. 830, 841 (1982).  Plaintiff has not presented any allegations by which the conduct of

Defendants Hoppes and R&H could be fairly attributed to the State.   Accordingly, Plaintiff's

Section 1983 claims against them will be dismissed.

### 2.    Defendant Butler

Plaintiff has also named Ionia County Prosecuting Attorney Kyle Butler as a Defendant in

this matter, in both his official and individual capacities.   For the following reasons, Plaintiff

cannot maintain his claims against Defendant Butler.

### a.    Official Capacity

Official-capacity lawsuits "generally represent only another way of pleading an action

against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

(citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).  An

official-capacity suit is to be treated as a suit against the entity itself.  *Id*. at 166 (citing *Brandon v.

Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.

1994).  "Individuals sued in their official capacities stand in the shoes of the entity they represent,"

and the suit is not against the official personally.  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66.  Although prosecutors may be elected county officials or employed by the county, prosecutors in Michigan are deemed to be state agents when prosecuting state criminal charges.  *Cady v. Arenac Cnty.*, 574 F.3d 334, 342–43 (6th Cir. 2009).  Therefore, Plaintiff's claims against Defendant Butler in his respective official capacity are actually claims against the State of Michigan.

Regardless of the form of relief requested, the states are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Accordingly, Plaintiff has failed to state a claim against Defendant Butler in his official capacity.[1]

### b.    Individual Capacity

Defendant Butler, as a prosecutor, is entitled to absolute immunity for his actions in prosecuting the criminal action against Plaintiff.  The Supreme Court embraces a functional

---

[1] Ordinarily, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  While Plaintiff seeks injunctive relief in the form of various provisions regarding his current conditions of confinement, Defendant Butler, as Prosecuting Attorney, has no control over those conditions.  The Court, therefore, concludes that the *Ex Parte Young* exception does not apply.

approach to determining whether a prosecutor is entitled to absolute immunity.  *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate.  *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003).  The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Acts which occur in the course of the prosecutor's role as advocate are entitled to the protection afforded by absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276–78 (1993); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989).  In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process.  *Spurlock*, 330 F.3d at 797.

The actions of Defendant Butler—charging Plaintiff and presenting the testimony of witnesses during his preliminary examination—are intimately associated with the judicial phase of the criminal process.  Moreover, to the extent Plaintiff faults Defendant Butler for not charging Vaughn with assaulting him, Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Accordingly, Defendant Butler is entitled to absolute immunity from Plaintiff's claims against him in his individual capacity, and such claims will be dismissed.

### 3.    Defendant Ionia County Sheriff's Department

Plaintiff has also sued the Ionia County Sheriff's Department.  Sheriff's departments, however, are not legal entities subject to suit pursuant to Section 1983.  *See Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich.

1995).  The Sheriff's Department is simply an agency of Ionia County.  *See Vine*, 884 F. Supp. at 1158.   Plaintiff's claims against the Ionia County Sheriff's Department will, therefore, be dismissed.   The Court, however, will liberally construe Plaintiff's allegations and assume that Plaintiff intended to sue Ionia County.

Ionia County may not be held vicariously liable for the actions of its employees under Section 1983.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694.  Instead, a county is liable only when its official policy or custom causes the injury.  *Connick*, 563 U.S. at 60.  This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom.  *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department.  *See Monell*, 436 U.S. at 690.  Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law."  *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).  "In short, a 'custom' is a 'legal institution' not memorialized by written law."  *Id*. at 508.  Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injury was a result of an official policy or custom employed by the Ionia County Sheriff's Department.  Thus, the Court will dismiss Plaintiff's claims against Ionia County. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of Section 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

### 4.      Defendant Dow

Plaintiff also sues Michigan State Police Trooper Dow.  Plaintiff's only factual allegation concerning Defendant Dow, however, is that he was on scene at the Super 8 Motel when Defendants Kasul, Pieters, and Straubel contacted and interviewed Plaintiff and Vaughn.  (ECF No. 1, PageID.5.)  Where an individual is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  Plaintiff's assertion that Defendant Dow was present at the scene is simply insufficient to allege a plausible constitutional claim against him.  The Court, therefore, will dismiss Plaintiff's claims against Defendant Dow.

### 5.      Defendants Pieters, Straubel, and Kasul

Plaintiff has also named Defendants Pieters, Straubel, and Kasul, all of whom are employed by the Ionia County Sheriff's Department, in both their official and individual capacities.  For the following reasons, Plaintiff cannot maintain his claims against these Defendants.

#### a.      Official Capacity

As explained above, an action against a defendant in his or her official capacity intends to impose liability only on the entity that he or she represents.  *Alkire*, 330 F.3d at 810.  Therefore, "[a] suit against an individual in his [or her] official capacity is the equivalent of a suit against the

governmental entity." *Matthews*, 35 F.3d at 1049. Here, because Defendants Pieters, Straubel, and Kasul represent Ionia County, Plaintiff's suit intends to impose liability on the county. However, "[g]overnmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692). As described *supra*, Plaintiff has failed to describe any county policy or custom that resulted in his injuries, and Plaintiff cannot maintain suit against Ionia County merely because it employed Defendants Pieters, Straubel, and Kasul. Plaintiff's official capacity claims against these Defendants will, therefore, be dismissed.

### b.   Individual Capacity

Plaintiff vaguely asserts that Defendants violated his First Amendment right to access the court for redress of grievances. (ECF No. 1, PageID.13.) The amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment. A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials."). Plaintiff, however, fails to

13

provide facts alleging how Defendants Pieters, Straubel, and Kasul violated his First Amendment right to petition the government for redress.  Accordingly, his First Amendment claims against them will be dismissed.

Plaintiff next contends that these Defendants violated his equal protection rights under the Fourteenth Amendment by "refusing prosecution of C. Vaughn after she made numerous admissions that she assaulted" Plaintiff and by arresting and charging him with a crime "with no physical evidence or admission."  (ECF No. 1, PageID.13.)  Essentially, Plaintiff is alleging that these Defendants violated his constitutional rights by failing to pursue prosecution of Vaughn.  As noted *supra*, Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Diamond*, 476 U.S. at 64.  Moreover, Plaintiff fails to allege that these Defendants played any role in the decision to prosecute or not prosecute either Plaintiff or Vaughn.

Plaintiff also fails to allege an equal protection claim against these Defendants for their role in investigating the reports of violence by Vaughn and Plaintiff and arresting Plaintiff.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., et al.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.  Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important

14

government interest."  *Id.* at 440–41.  However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

To establish a violation of the Equal Protection Clause, a plaintiff must show that the defendants purposely discriminated against him.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265–66.  Although Plaintiff's use of feminine pronouns in referring to Vaughn support the inference that she is female and Plaintiff is male,[2] Plaintiff does not allege that Defendants' actions (or inactions) were motivated by a purpose of discriminating against Plaintiff because of his gender.  Thus, it appears that Plaintiff intends to raise a "class of one" equal protection claim.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011).  "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one

---

[2] According to the Michigan Department of Corrections Offender Tracking Information System (OTIS), Plaintiff is male.  *See* https://mdocweb.state.mi.us/otis2/otis2.aspx (search "Last Name" Throneberry, "First Name" Ryan, and "Offender Status" All, visited January 6, 2022).  This Court takes judicial notice of the information provided by a search of the OTIS website with regard to Plaintiff. *See, e.g.*, *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).  OTIS also reveals that Plaintiff is (or at least was) 6 feet, 8 inches tall and weighed 300 pounds.  Moreover, Plaintiff was just discharged in February from a sentence of 2 to 5 years imprisonment following his guilty plea to a charge of domestic violence-3rd offense, in violation of Mich. Comp. Laws § 750.81(5).

individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original).  A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory."  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)).  "[U]nless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors."  *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The Supreme Court illustrated the need to limit the scope of class-of-one equal protection claims by reference to a traffic officer stationed on a busy highway where people often drive above the speed limit:

> If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did.  But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification.  Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances.  Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be

16

> incompatible with the discretion inherent in the challenged action.  It is no proper
> challenge to what in its nature is a subjective, individualized decision that it was
> subjective and individualized.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603–04 (2008).  Of course, that is not quite the

circumstance the Defendant officers faced here.  According to Plaintiff, the officers here were

confronted with an allegation by Plaintiff that Vaughn had slapped him and knocked Plaintiff to

the ground, on the one hand, and an allegation by Vaughn, corroborated by a witness, that Plaintiff

had punched her in the back and knocked her off her feet, on the other.  Yet they arrested only

Plaintiff.

Because the crux of an equal protection violation is the treatment of similarly situated

people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to

a comparator in 'all relevant respects.'"  *Tree of Life Christian Schools v. City of Upper Arlington*,

905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th

Cir. 2015)).   In other words, "the comparative [person] 'must have dealt with the same

[decisionmaker], have been subject to the same standards, and have engaged in the same conduct

without such differentiating or mitigating circumstances that would distinguish their conduct or

the[ decision-maker's] treatment of them for it.'"  *Umani v. Mich. Dep't of Corr.*, 432 F. App'x

453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352

(6th Cir. 1998)).  Here, there is no reason to expect that the officer on scene could know exactly

what had actually happened.  Nor does it follow from the allegations that Plaintiff and Vaughn

were similarly situated in all relevant respects.  This situation is more akin to the traffic officer

ticketing only one of several speeders.  Plaintiff has not alleged facts to support the argument that

the decision to arrest him and not Vaughn was based on discriminatory animus, rather than on

statements from a witness who corroborated Vaughn's version of events, the parties' size

differential, or any number of other facts as they were presented to the responding officer.

17

Plaintiff's conclusory claim of an equal protection violation and mere suggestion of intentional discrimination do not suffice. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's Fourteenth Amendment equal protection claims against Defendants Pieters, Straubel, and Kasul will, therefore, be dismissed.

Finally, Plaintiff asserts that his due process rights were violated when these Defendants unlawfully seized his property and when they failed to remedy the theft of his property by Vaughn and Livingston. (ECF No. 1, PageID.13–14.) Again, to the extent Plaintiff believes Vaughn and Livingston should have been charged with theft, he "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond*, 476 U.S. at 64. Moreover, an individual deprived of property has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). The plaintiff bears the burden of pleading that the available state remedies are inadequate. *See Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Here, Plaintiff fails to allege any reason why a state-court action would not afford complete relief for the deprivation of his property. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995). In any event, "Michigan [state law] provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver[y], [and] Mich. Comp. Laws. § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained." *Id.* at 480. The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *Id.* Plaintiff, therefore, cannot maintain his Fourteenth Amendment due process claims against Defendants Pieters, Straubel, and Kasul.

### III.    Motion for Preliminary Injunction

As noted above, Plaintiff has filed a motion for a preliminary injunction, requesting that the Court order Defendants to provide:  (1) a minimum of eight hours of law library access per week; (2) access to a telephone "not tethered to a collect call basis"; (3) to ensure he is free from retaliation; and (4) paper for drafting legal documents.  (ECF No. 3.)  To determine whether a plaintiff is entitled to preliminary injunctive relief, a court must consider the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *See Ne. Ohio Coal v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  Here, Plaintiff has not met his "initial burden" of demonstrating a strong or substantial likelihood of success on the merits of his action.  *See NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Moreover, the relief sought has a highly attenuated relationship to his complaint, particularly because most of the Defendants have no control over Plaintiff's current conditions of confinement. *See Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010).  The Court, therefore, will deny Plaintiff's motion for a preliminary injunction.  (ECF No. 3.)

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also deny Plaintiff's motion for a preliminary injunction.  (ECF No. 3.)  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff

might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Accordingly, the Court certifies that an appeal would not be taken in good faith.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A judgment consistent with this opinion will be entered.


Dated: January 14, 2022            /s/ Sally J. Berens
                                      SALLY J. BERENS
                                      U.S. Magistrate Judge