UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RYAN THRONEBERRY,

                    Plaintiff,                          Case No. 1:21-cv-903

v.                                                      Honorable Sally J. Berens

KYLE BUTLER et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. §§ 1983 and
1985.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff
consented to proceed in all matters in this action under the jurisdiction of a United States magistrate
judge.  (ECF No. 8.)  Plaintiff previously sought and was granted leave to proceed *in forma
pauperis*.  (ECF No. 10.)  This matter is before the Court for preliminary review of Plaintiff's
amended complaint.  (ECF No. 20.)

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or
without motion, add or drop a party for misjoinder or nonjoinder.  *See* Fed. R. Civ. P. 21.  Applying
Rules 18, 20, and 21 regarding joinder, the Court will drop Defendant Ionia County Correctional
Facility (ICCF) from this action and dismiss Plaintiff's claims against it without prejudice.  The
Court will also deny Plaintiff's "motion to enjoin defendant to the above cause."  (ECF No. 17.)

With regard to Plaintiff's remaining claims, under the Prison Litigation Reform Act, Pub.
L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action
brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which

relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

2

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that he is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that he is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Section 1983 and Section 1985 conspiracy claims, as well as his First Amendment retaliatory arrest claim against Defendants Kasul, Straubel, and Pieters. Plaintiff's Fourteenth Amendment selective prosecution claim against Defendant Butler; his Fourteenth Amendment equal protection claims against Defendants Kasul, Straubel, and Pieters; and his

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207-09, n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

municipal liability claim against Ionia County remain in the case. However, the Court will abstain from presently considering Plaintiff's remaining claims against the remaining Defendants under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 44–45 (1971).

## Discussion

### I.     Factual Allegations and Procedural Background

Plaintiff is presently incarcerated at the Ionia County Jail in Ionia, Michigan. Plaintiff sues Ionia County Prosecuting Attorney Kyle Butler, Lieutenant Jack Pieters, Sergeant Fredrick Straubel, Deputy Detective Chelsea Kasul, Ionia County, and ICCF.

In his initial complaint, Plaintiff alleged that on July 28, 2021, the Ionia County emergency dispatch system received calls from Plaintiff and Carrianne Marie Vaughn regarding a possible domestic assault. (ECF No. 1, PageID.4.) Defendants Kasul and Pieters were dispatched to the Super 8 Motel on South State Street in Ionia. (*Id.*, PageID.4–5.) Defendants Robert Dow II and Straubel arrived shortly thereafter. (*Id.*, PageID.5.) Plaintiff, who was "visibly upset and in a manic state of mind," told Defendants Kasul, Pieters, and Straubel that Ms. Vaughn had assaulted him. (*Id.*) He averred that Ms. Vaughn verified this claim by her "own admission in both the 911 call and in her interview with Defendant Kasul." (*Id.*) Plaintiff told the officers that he had not touched Ms. Vaughn. (*Id.*, PageID.6.)

Defendant Kasul interviewed Ms. Vaughn, who stated that Plaintiff had "punched her in the spine with enough force to knock her to the ground." (*Id.*) Ms. Vaughn also noted that she was the aggressor and had started the dispute by slapping Plaintiff. (*Id.*) Defendant Pieters interviewed Gordon Skidmore, who had been present during the incident. (*Id.*) Plaintiff alleged that "there is no recording of this interview, nor was there a written statement of G. Skidmore." (*Id.*) According to Plaintiff, Skidmore told him, in a recorded conversation, that he had told the officers that Ms. Vaughn slapped Plaintiff, and that Plaintiff "had lost his balance and fell." (*Id.*)

Skidmore also stated that he had given false testimony at Plaintiff's preliminary examination because Defendant Butler, the prosecuting attorney, "threatened to have Mr. Skidmore arrested if he refused to go along with Mr. Butler's narrative of the events in question." (*Id.*, PageID.7.)

Plaintiff was arrested for domestic assault; Ms. Vaughn was never arrested or charged. (*Id.*)  On August 23, 2021, Plaintiff appeared in court for his preliminary hearing. (*Id.*)  He averred that during the hearing, Ms. Vaughn "admitted under oath to assaulting [Plaintiff] and to being the aggressor." (*Id.*)  Defendant Kasul testified that Plaintiff had been arrested because his statement denying that he had touched Ms. Vaughn contradicted statements made by Ms. Vaughn and Skidmore that Plaintiff had punched Ms. Vaughn in the back. (*Id.*, PageID.7–8.)  When asked, Defendant Butler refused to provide information as to why Ms. Vaughn had not been arrested or charged after admitting that she had assaulted Plaintiff. (*Id.*, PageID.8.)

After Plaintiff was detained, Ms. Vaughn "fraudulently obtained [his] [']02 Trailblazer by pretending to be his significant other, along with all the property inside, valued in excess of $15,000.00." (*Id.*)  Plaintiff reported the property stolen to Defendant Kasul on September 11, 2021. (*Id.*)  Defendant Kasul interviewed Ms. Vaughn, who admitted taking the property, but alleged that a man named Jesse had taken the vehicle and property to store for Plaintiff. (*Id.*, PageID.9.)  Defendant Kasul asked Plaintiff about Jesse, and Plaintiff provided contact information for a Jesse Alan Livingston, as well as the location and description of the truck. (*Id.*)  Plaintiff told Defendant Kasul that Ms. Vaughn had no authorization to do anything with his property, and that he had authorized only his mother and significant other, Melisa Rogers, to handle his affairs. (*Id.*, PageID.9–10.)  Plaintiff asked Defendant Kasul to have "all parties involved arrested and prosecuted to the fullest extent of the law." (*Id.*, PageID.10.)

Plaintiff averred that a month passed, during which time he tried to contact Defendant Kasul about his property on three occasions with no response.  (*Id.*)  On October 14, 2021, Defendant Kasul informed Plaintiff that his vehicle had been recovered, but that she had made a call to have it impounded at Defendant R&H, owned by Defendant Hoppes.  (*Id.*, PageID.10–11.) Plaintiff alleged that there has been "ongoing animosity" between him and Defendants Hoppes and R&H since May of 2021, because Plaintiff started refusing service to their drivers in response to their refusal to "move a car that Plaintiff had purchased."  (*Id.*, PageID.11.)  According to Plaintiff, these Defendants refused to release his vehicle unless he produced a title in his name, which Plaintiff claimed is impossible because he is detained and never had a chance to change over the title information. (*Id.*, PageID.12.)  Plaintiff averred that Defendant Kasul had no reason to impound the vehicle because he "made it very clear he wanted all his property turned over to Melisa Rogers, his longtime significant other."  (*Id.*)

Based on the foregoing, Plaintiff asserted that Defendants conspired to deprive him of his rights, in violation of 42 U.S.C. § 1985.  (*Id.*, PageID.13.)  He also averred that Defendants, especially Defendant Butler, violated his First Amendment right to petition for redress of grievances and his Fourteenth Amendment equal protection rights.  (*Id.*)  Plaintiff further argued that Defendants violated his Fourteenth Amendment due process rights by depriving him of his property.  (*Id.*, PageID.13–14.)  Plaintiff sought declaratory relief, as well as compensatory, nominal, and punitive damages.  (*Id.*, PageID.14.)  He also sought injunctive relief in the form of an order directing Defendants to provide him "access to the same resources an attorney would have, and a minimum of access to law library material for 8 hours per week."  (*Id.*, PageID.15.)

In an opinion and judgment (ECF Nos. 11, 13) entered January 14, 2022, the Court dismissed Plaintiff's complaint for failure to state a claim.  Specifically, the Court noted that:

(1) Plaintiff's conclusory allegations failed to set forth a Section 1985 conspiracy claim against Defendants; (2) Plaintiff could not maintain Section 1983 claims against R&H and Hoppes because he failed to allege plausibly that they acted under color of state law; (3) Plaintiff's claims against Defendant Butler were barred by Eleventh Amendment and prosecutorial immunity; (4) the Ionia County Sheriff's Department was not a legal entity subject to suit under Section 1983, and Plaintiff had failed to plausibly allege that his alleged constitutional injury was the result of an official custom or policy employed by Ionia County; (5) Plaintiff had not alleged any facts regarding how Defendant Dow was personally involved in the alleged constitutional violations; (6) Plaintiff had failed to allege how Defendants Pieters, Straubel, and Kasul violated his First Amendment right to petition the government for redress; (7) Plaintiff had failed to allege a plausible class-of-one equal protection claim against Defendants Pieters, Straubel, and Kasul; and (8) Plaintiff could not maintain his due process claims against Defendants Pieters, Straubel, and Kasul because Michigan provides adequate post-deprivation remedies for deprivation of property. (ECF No. 11.)

Plaintiff subsequently filed a motion to alter or amend judgment (ECF No. 14), a motion for leave to file an amended complaint (ECF No. 16) and proposed amended complaint (ECF No. 16-1), "motion to enjoin defendant to the above case" (ECF No. 17), and objection and motion to strike (ECF No. 18), requesting that certain information in the Court's January 14, 2022 opinion be stricken. In his motion to amend, Plaintiff stated that when he filed his initial complaint, he had limited information available to him. (ECF No. 16, PageID.79.) He averred that he now seeks to raise claims of "selective enforcement, gender discrimination, and retaliatory arrest." (*Id.*, PageID.80.) In an order (ECF No. 19) entered February 7, 2022, the Court granted Plaintiff's motion to alter or amend the judgment (ECF No. 15) to prevent manifest injustice and permit Plaintiff to raise his equal protection claim based upon gender discrimination. The Court also

vacated the judgment (ECF No. 13) entered on January 14, 2022; granted his motion for leave to file an amended complaint (ECF No. 16) and directed the Clerk to file the proposed amended complaint as the operative pleading in this matter; and denied his objection and motion to strike (ECF No. 18).  The Court indicated that it would screen Plaintiff's amended complaint pursuant to the PLRA in a separate opinion.

In his amended complaint, Plaintiff alleges that on July 28, 2021, Ionia County central dispatch received calls from Plaintiff and Ms. Vaughn concerning an alleged domestic assault. (ECF No. 20, PageID.111.)  When officers responded, Plaintiff was interviewed first and told officers that Ms. Vaughn had slapped him after an argument.  (*Id.*)  He denied "ever touching Ms. Vaughn."  (*Id.*)  Plaintiff told officers that Gordon Skidmore may have seen the incident.  (*Id.*) Skidmore later confirmed that he had told the officers that he saw Ms. Vaughn hit Plaintiff.  (*Id.*) He also told Plaintiff that he told the officers that after Ms. Vaughn hit Plaintiff, "Plaintiff lost his balance and fell, and it looked like Plaintiff may have touched Ms. Vaughn trying to catch himself."  (*Id.*)

Defendants Kasul and Pieters were the officers who interviewed Ms. Vaughn and Skidmore.  (*Id.*)  Plaintiff claims that Defendant Kasul's dash cam had a "mysterious audio malfunction and solely missed the description of events by Ms. Vaughn."  (*Id.*)  He also claims that Defendant Pieters "happened to drive a patrol vehicle that was not equipped with a dash cam, nor was he wearing any sort of recording device."  (*Id.*, PageID.112.)  Plaintiff avers that Defendants Pieters and Kasul did not obtain written statements.  (*Id.*)  He alleges that despite these interviews, Defendants Pieters, Kasul, and Straubel arrested him for domestic assault, and that the arrest was retaliatory "for the Plaintiff not incriminating himself to Defendants."  (*Id.*)

8

Plaintiff alleges that before his arraignment, and after discussions with Defendant Butler, Defendant Kasul "gave perjured testimony and fabricated facts, for the purpose of authorization of the felony complaint and warrant." (*Id.*)  Defendants Kasul and Pieters also fabricated facts to establish probable cause for Plaintiff's arrest.  (*Id.*)  Plaintiff claims that instead of arresting Ms. Vaughn, Defendants Kasul and Pieters sent a warrant request to Defendant Butler's office.  (*Id.*, PageID.113.)  He argues that in that request, Defendant Kasul mentioned that Plaintiff had three prior convictions for domestic violence in 2018.  Defendant Butler's office "denied the warrant and charges against [Ms.] Vaughn, claiming Plaintiff was the aggressor solely because Plaintiff is male and Ms. Vaughn is female." (*Id.*)  Plaintiff argues that Defendant Kasul included the information about his prior convictions to "prejudice the facts of this case." (*Id.*)  He also avers that his prosecution by Defendant Butler has been "malicious and vindictive." (*Id.*)  Plaintiff claims that Defendants Kasul, Pieters, Straubel, and Butler conspired to violate his constitutional rights because they "all work side by side." (*Id.*)

According to Plaintiff, Defendant Straubel and Deputy Austin Granger (not a party) responded to an alleged domestic assault involving Ms. Vaughn and Skidmore on December 1, 2021.  (*Id.*)  Skidmore allegedly told the officers that he and Ms. Vaughn had been in a verbal altercation, and that she stabbed him in the face three times with a pair of tweezers.  (*Id.*)  A complaint was lodged against Ms. Vaughn for domestic assault, but Plaintiff claims that "in lieu of arrest she was released from the scene [and] a warrant was requested from the prosecutor's office." (*Id.*, PageID.114.)  However, Defendant Butler's office "once more denied charges, claiming insufficient evidence." (*Id.*)  Plaintiff alleges that by this incident, "Defendant Ionia County seems to have an unwritten rule, policy, or custom regarding the prosecution of females in a domestic violence situation." (*Id.*)

9

Plaintiff goes on to allege that in December of 2021, unknown staff members at ICCF confiscated approximately eight postcards that were sent to him by his significant other, Melisa Ring. (*Id.*) Plaintiff avers that these postcards were never delivered to him, and that he did not receive any reason for their denial. (*Id.*) On December 30, 2021, during a phone call, Ms. Ring told Plaintiff that she had been writing to him, but that ICCF kept returning the postcards to her house. (*Id.*) Ms. Ring told Plaintiff that they were returned to her in a manilla envelope with a "letter claiming they were undeliverable due to content or the[y] did not meet the [parameters] in the guidelines." (*Id.*, PageID.114–115.) Plaintiff claims, however, that he has received other postcards from Ms. Ring. (*Id.*, PageID.115.) He states that ICCF is aware of this lawsuit because he "had to go through officers to get copies of filings," and that he "had no issues getting approved correspondence prior to the filing of his lawsuit." (*Id.*) In his "motion to enjoin defendant to the above cause" (ECF No. 18), Plaintiff asserts that his claims against ICCF arose "as a result and direct transaction as the matter already before this Court." (*Id.*, PageID.99.)

Based on the foregoing, Plaintiff asserts claims of due process and equal protection violations, selective prosecution, retaliatory arrest, municipal liability, violations of his First Amendment rights to association and send and receive mail, and civil conspiracy pursuant to Section 1983 and Section 1985(2) and (3). (*Id.*, PageID.115–119.) Plaintiff seeks declaratory and injunctive relief in the form of prohibiting "further retaliation from Defendants," as well as damages. (*Id.*, PageID.120.)

## II.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted).  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the

11

defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner[ litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

failed to pay a debt, and E infringed his copyright, all in different transactions—
should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998)

(declining to allow "litigious prisoners [to] immunize frivolous lawsuits from the 'three strikes'

barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983

suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001)

(declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing

fee, because it "would improperly circumvent the express language and clear intent of the 'three

strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's

request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to

circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of

obtaining a "strike" under the "three strikes" rule).  To allow Plaintiff to proceed with improperly

joined claims and defendants in a single action would permit him to circumvent the PLRA's filing

fee provisions and allow him to avoid having to incur a "strike" for purposes of Section 1915(g),

should any of his claims turn out to be frivolous.  Courts are therefore obligated to reject misjoined

complaints like Plaintiff's.  *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court, therefore, will look to the first named Defendant and the earliest clear factual

allegations involving that Defendant to determine which portion of the action should be considered

related.  Here, Plaintiff names Defendant Butler as the first Defendant in the caption of the

amended complaint as well as in his list of Defendants.[2]  Plaintiff's claims against Defendant Butler concern his allegedly discriminatory arrest and prosecution for domestic violence. Plaintiff's allegedly discriminatory arrest and prosecution for domestic violence also lies at the core of Plaintiff's claims against Defendants Kasul, Straubel, Pieters, and Ionia County.

Plaintiff's claim against ICCF, however, is wholly unrelated to his arrest and prosecution. Plaintiff's claim against ICCF concerns alleged First Amendment violations based upon the rejection of several postcards that Plaintiff's significant other attempted to send to him.  Plaintiff vaguely suggests that all Defendants conspired to violate his constitutional rights and that the only reason he can conceive why ICCF would interfere with his mail is in retaliation for the instant action.

Plaintiff, however, cannot manufacture proper joinder out of conclusory allegations of conspiracy and retaliation.  A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565–66 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible

---

[2] The analysis of joinder must start somewhere.  By accepting the first-named party as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

suggestion of conspiracy," not merely a possible one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Here, Plaintiff's allegations of conspiracy are conclusory and speculative.  He provides no allegations establishing a link between the alleged conspirators or any agreement between them. Rather, he relies entirely on an attenuated inference that officers at ICCF knew about the instant lawsuit because he had to ask them for copies of filings.  Moreover, Plaintiff's allegations of retaliation are conclusory and speculative; Plaintiff merely alleges the fact of retaliation without providing any supporting facts to bolster his claim.  Plaintiff's conclusory claims of conspiracy and retaliation cannot, therefore, provide a link between his claims against ICCF and his claims against Defendants Butler, Kasul, Straubel, Pieters, and Ionia County.

Because the Court has concluded that Plaintiff has improperly joined Defendant ICCF to this action, the Court must determine an appropriate remedy.  Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.*  Instead, Rule 21 provides two remedial options:  (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coalition to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").  "Because a district court's decision to remedy misjoinder by

dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under Section 1983, the statute of limitations is three years.  *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling.  The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted.  *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1999) . . . .  This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available."  For

> this reason, the statute of limitations which applied to Brown's civil rights action
> was tolled for the period during which his available state remedies were being
> exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and

*Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)).  The Sixth Circuit noted that

because it could not determine when the period of exhaustion expired, the appropriate remedy was

to remand the case to the District Court to "consider and decide the period during which the statute

of limitations was tolled and for such other proceedings as may be necessary."  *Id.* at 597.

Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action

was pending which was later dismissed without prejudice."  *Kalasho v. City of Eastpointe*, 66 F.

App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that Defendant ICCF engaged in conduct in December 2021.  Whether or

not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *Brown*,

209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has

sufficient time in the limitations period to file a new complaint against Defendant ICCF, and he

will not suffer gratuitous harm if this Defendant is dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendant ICCF

from this suit, dismissing Plaintiff's claims against it without prejudice to the institution of a new,

separate lawsuit.  *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case,

the court can generally dismiss all but the first named plaintiff without prejudice to the institution

of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).  If

Plaintiff wishes to proceed with his dismissed claims regarding mail interference at ICCF, he shall

do so by filing a new civil action on the forms provided by this Court, *see* W.D. Mich. LCivR

5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in*

*forma pauperis.*  Given the Court's dismissal of Defendant ICCF, the Court will deny Plaintiff's "motion to enjoin defendant to the above case" (ECF No. 17).[3]

### III.   Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

---

[3] In any event, Plaintiff cannot maintain an action against ICCF because a county jail is a building that houses prisoners and pretrial detainees, not a "person" capable of being sued under Section 1983.  *See Goldman v. Kalamazoo Cnty. Jail*, No. 1:16-cv-359, 2016 WL 3180043, at *2 (W.D. Mich. June 8, 2016) (collecting cases).  Thus, if Plaintiff wishes to raise his First Amendment claims concerning mail deprivation at ICCF in a new lawsuit, he is advised that he must name the individuals who were personally involved in such deprivation and cannot proceed against ICCF.

A.      **Claim Pursuant to 42 U.S.C. § 1985**

Plaintiff again asserts that Defendants conspired to violate his rights, in violation of 42 U.S.C. § 1985(2) and (3).  The first clause of subsection (2) is inapplicable, however, because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings.  *See* 42 U.S.C. § 1985(2).  The second clause of subsection (2) prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights, *see id.*, and subsection (3) prohibits conspiracies to deprive individuals of their equal protection rights, *see* 42 U.S.C. § 1985(3).  Nevertheless, under both clauses, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).

Here, Plaintiff again vaguely suggests that the alleged conspiracy was motivated by his gender.  *See Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994).  Nevertheless, while Plaintiff alleges that Defendants worked together, his complaint is devoid of facts suggesting that the Defendants overtly agreed to violate his equal protection rights.  *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (noting that a plaintiff must set forth facts alleging that defendants agreed to violate the plaintiff's rights and committed an overt act in furtherance of that agreement).  Plaintiff's conclusory allegations are insufficient to maintain his Section 1985 conspiracy claim against Defendants.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) (noting that "conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim").  The Court, therefore, will dismiss Plaintiff's claim pursuant to Section 1985.

### B.      Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.      Civil Conspiracy Claim

Plaintiff alleges that Defendants conspired to violate his constitutional rights in violation of Section 1983.  Plaintiff "feels the Defendants conspired against [him] as a means to remove Plaintiff from society, because Plaintiff has a good bit of influence in the Odinist/Asatru community, through online groups and forums."  (ECF No. 20, PageID.119.)  Plaintiff suggests that Defendants acted in collusion to arrest and prosecute him.  However, as discussed *supra* in Parts II and III.A, Plaintiff's allegations of conspiracy are conclusory and speculative.  His Section 1983 civil conspiracy claim will, therefore, be dismissed.

### 2.      Defendant Butler

Plaintiff again names Ionia County Prosecuting Attorney Kyle Butler as a Defendant in this matter, in his individual capacity.  Plaintiff suggests that Defendant Butler engaged in selective prosecution, arguing that he selected Plaintiff for prosecution solely because of his gender.  He also argues that Defendant Butler's prosecution of him has been malicious and vindictive based upon the alleged gender discrimination because Defendant Butler has twice declined to prosecute Ms. Vaughn for domestic assault.

The Court previously noted that the Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

The Court acknowledges, however, that a prosecutor "will not be protected from decisions regarding prosecution that are 'deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification.'" *Nouri v. Cnty. of Oakland*, No. 2:10-cv-13700, 2013 WL 474522, at *5 (E.D. Mich. Feb. 4, 2013) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To determine whether selective prosecution has occurred, the Sixth Circuit has set for the following three-part test:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). With respect to the first element, "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997).

Gender is an impermissible factor upon which a plaintiff may base a selective prosecution claim. *See Hutson v. Felder*, No. 5:07-183-JMH, 2008 WL 4186893, at *5 (E.D. Ky. Sept. 10,

2008) (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  Here, Plaintiff avers that Defendant Butler selectively prosecuted him based upon his gender as evidenced by the fact that Butler twice declined to prosecute Ms. Vaughn, a female, for the same offense—domestic assault.  (ECF No. 20, PageID.116.)  He also alleges that Defendant Butler stated that Ms. Vaughn's assault of Plaintiff was "inconsequential" because she is female.  (*Id.*)  Plaintiff's amended complaint, therefore, alleges a colorable equal protection selective prosecution claim against Defendant Butler, such that the Court cannot conclude that Defendant Butler is entitled to prosecutorial immunity.  Plaintiff will, therefore, be permitted to proceed on his selective prosecution claim against Defendant Butler.

### 3.      Defendant Ionia County

Ionia County may not be held vicariously liable for the actions of its employees under Section 1983.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60.  This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom.  *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality.  *See Monell*, 436 U.S. at 690.  Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law."  *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).  "In short, a 'custom' is a 'legal institution' not memorialized by written law."

*Id.* at 508.  A plaintiff may allege facts showing one of the following circumstances to demonstrate a policy or custom:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

In his amended complaint, Plaintiff alleges that Ionia County "has a policy, whether unwritten, or possibly a habit, of selectively prosecuting males for domestic violence while declining to do the same to females who abuse their male counterparts."  (ECF No. 20, PageID.118.)  He suggests that this policy is evidenced by the fact that the prosecutor's office twice declined to charge Ms. Vaughn with domestic violence even though on two separate occasions she was accused of domestic violence by two males—Plaintiff and Skidmore.  The Court concludes, therefore, that Plaintiff's amended complaint sets forth a plausible municipal liability claim against Defendant Ionia County.

### 4.    Defendants Pieters, Straubel, and Kasul

Plaintiff has also named Defendants Pieters, Straubel, and Kasul, all of whom are employed by the Ionia County Sheriff's Department, in both their official and individual capacities.  Plaintiff contends that they arrested him in retaliation for exercising his Fifth Amendment right against self-incrimination.  He also appears to suggest that their actions violated his equal protection rights because they were motivated by gender., *i.e.*, they arrested him for domestic violence but not Ms. Vaughn.

### a. Retaliatory Arrest

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to retaliatory arrest claims, however, the Supreme Court recently held that the existence of probable cause generally defeats the causation element. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019). Nevertheless, the *Nieves* Court also concluded that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727. Plaintiff argues that he was arrested because he did not admit to committing a crime. He argues that during his preliminary examination, defense counsel asked Defendant Kasul why Plaintiff was arrested and not Ms. Vaughn. (ECF No. 20, PageID.117.) Defendant Kasul testified, "Because he claimed to not have touched [Vaughn] at all, but there was a witness . . . who claimed he had." (*Id.*) Based on Plaintiff's allegation, he appears to suggest the no-probable-cause requirement should not apply because Ms. Vaughn was not arrested and did not engage in the same sort of protected speech.

In any event, however, Plaintiff's claim that he exercised his Fifth Amendment right to be free from self-incrimination is misplaced. The "Fifth Amendment privilege against compelled

self-incrimination is not self-executing." *Roberts v. United States*, 445 U.S. 552, 559 (1980). Thus, if an individual "makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Garner v. United States*, 424 U.S. 648, 654 (1976). Here, nothing in Plaintiff's complaint suggests that he affirmatively claimed his Fifth Amendment privilege.  Instead, Plaintiff explicitly alleges that when interviewed by the officers, he told them that Ms. Vaughn had slapped him and "denied ever touching Ms. Vaughn."  (ECF No. 20, PageID.111.)  A denial is not the same as invoking the right to be free from self-incrimination. Plaintiff cannot show that he engaged in constitutionally protected conduct for purposes of the first prong of a retaliation claim.  *See Jackson v. Dohman*, No. 11-6890, 2013 WL 775598, at *2 (E.D. Pa. Mar 1, 2013) (concluding that a prisoner-plaintiff could not maintain a Fifth Amendment retaliation claim when he did not remain silent and instead answered an officer's question in the negative).  Plaintiff's retaliatory arrest claim against Defendants Kasul, Straubel, and Pieters will, therefore, be dismissed.

### b.    Equal Protection

Plaintiff also appears to suggest that Defendants Kasul, Straubel, and Pieters violated his equal protection rights by arresting him and not Ms. Vaughn for domestic violence based upon his gender.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a suspect class such as one defined by race, alienage, or national origin, or invades a fundamental right such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  Where legislation singularly and negatively affects a "quasi-

suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important governmental interest." *Id.* at 437-38, 440–41. However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposely discriminated against him. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. Here, Plaintiff alleges that Defendants' actions (or inactions) were motivated by a purpose of discriminating against him because of his gender. Plaintiff alleges that Defendants arrested him for domestic violence because he is male and declined to arrest Ms. Vaughn for the same offense because she is female. The Court, therefore, concludes that Plaintiff has set forth a plausible equal protection selective enforcement claim against Defendants Kasul, Straubel, and Pieters for substantially the same reasons he has set forth a plausible claim against Defendant Butler.

## IV.    Abstention under *Younger v. Harris*, 401 U.S. 37 (1971)

Plaintiff asks the Court to enjoin the Defendants' vindictive, malicious, retaliatory, discriminatory, and selective criminal prosecution of Plaintiff for domestic assault. Generally, federal courts should abstain from deciding a matter that would interfere with pending state proceedings involving important state matters unless extraordinary circumstances are present. *Younger*, 401 U.S. at 44–55. This principle is based on notions of equity and comity, "and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44.

26

*Younger* generally permits a federal court to abstain from considering a plaintiff's claims where:  (1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal questions.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Exceptions to the *Younger* abstention doctrine have been recognized in the following circumstances:  (1) where "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) where "[a] challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 424 (1979) (quoting *Huffman*, 420 U.S. at 611); and (3) where there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). These exceptions have been interpreted narrowly.  *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986).

The three factors supporting *Younger* abstention are present in this case. First, Plaintiff alleges that the misconduct of the Defendants relates to a criminal prosecution that is ongoing. Second, Plaintiff's prosecution involves important state interests.  *See Younger*, 401 U.S. at 43 (recognizing that when the state proceeding is criminal in nature, the policy against federal interference is "particularly" strong); *see also Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980) ("*Younger* established a near-absolute restraint rule when there are pending state criminal proceedings.").  Third, the state court proceedings provide an adequate opportunity for Plaintiff to raise his constitutional challenges.  Certainly, Plaintiff will not hesitate to raise his claims that the allegations are simply false and that Defendants are prosecuting him for inappropriate reasons. Indeed, "[a]bstention is appropriate 'unless state law *clearly bars* the interposition of the constitutional claims.'"  *American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d

328, 334 (6th Cir. 2007) (quoting *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006)). State

law does not clearly bar the presentation of Plaintiff's constitutional claims in his criminal

prosecution.

Furthermore, Plaintiff's allegations do not implicate any of the *Younger* exceptions. He

does not allege a flagrantly unconstitutional statute or an extraordinarily pressing need for federal

relief. Plaintiff's allegations might be read to support a claim that Defendants have acted in bad

faith or intend to harass Plaintiff. But, the Sixth Circuit has interpreted the "bad faith/harassment"

exception very narrowly:

> As we have explained, the Supreme Court has applied the bad faith/harassment
> exception "to only one specific set of facts: where state officials initiate repeated
> prosecutions to harass an individual or deter his conduct, and where the officials
> have no intention of following through on these prosecutions." *Ken-N.K., Inc. v.
> Vernon Township*, 18 F. App'x 319, 324–25 n.2 (6th Cir. 2001) (citing Erwin
> Chemerinsky, Federal Jurisdiction § 13.4, at 806–08 (3d ed. 1999) ); *see also, e.g.,
> McNatt v. Texas*, 37 F.3d 629 (5th Cir. 1994) (holding that the bad faith/harassment
> exception to *Younger* "is extremely narrow and applies only in cases of proven
> harassment or prosecutions undertaken without hope of obtaining valid
> convictions"). In this case, the alleged harassment and other "willful, egregious,
> [and] malicious" conduct does not rise to the level required by the exception
> because there have not been repeated prosecutions of [plaintiff].

*Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *4 (6th Cir. Nov. 27, 2018). Moreover,

courts routinely conclude that claims of selective enforcement or enforcement that violate equal

protection do not fit within the bad faith/harassment exception. *See, e.g.*, *Fieger v. Thomas*, 74

F.3d 740, 750 (6th Cir. 1996) (rejecting Plaintiff Fieger's bad faith argument stating that "[a] claim

of selective prosecution really amounts to a weak equal protection claim[; a]nd, as Justice Holmes

pointed out . . . a claim of a violation of the Equal Protection Clause based upon selective

enforcement 'is the usual last resort of constitutional arguments.'"); *Goodwin v. Cnty. of Summit,

Ohio*, 45 F. Supp. 3d 692, 703 (N.D. Ohio 2014) (concluding that "[w]hile plaintiffs' allegations

of selective prosecution and improper motive on the part of defendants *may* ultimately prove

sufficient to state a claim for selective prosecution in this federal action, none of these allegations, even if assumed to be true, rise to the level of bad faith or harassment required for the first exception to *Younger* abstention.") (footnote omitted); *Deters v. Drexel*, No. 1:19-cv-562, 2019 WL 7282112, at *3 (S.D. Ohio Dec. 27, 2019) (stating that "claims of selective prosecution are generally insufficient to show bad faith or harassment."). Any claim that Plaintiff's prosecution is motivated by bad faith or harassment falls short because the Defendants did not fail to follow through on repeated prosecutions.

Because none of the exceptions to *Younger* abstention apply, the doctrine supports abstention here. *Cf. Michel v. City of Akron*, 278 F. App'x 477, 479 (6th Cir. 2008) (affirming application of *Younger* abstention to claim that defendants violated the plaintiff's Fourth Amendment rights when searching his property). Consequently, so long as Plaintiff's criminal proceedings remain pending in state court, the Court will not review the actions of the Defendants in connection with the allegedly false charges or the vindictive, malicious, retaliatory, discriminatory, and selective criminal prosecution of Plaintiff. *Younger* abstention warrants dismissal of a claim without prejudice. However, where the relief sought by the plaintiff is damages, the Court "must stay the case instead of exercising its discretion in deciding to dismiss the case." *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013). "This is because the United States Supreme Court has held that '[u]nder our precedents, federal courts have the power to dismiss or remand cases based on abstention principles *only where the relief being sought is equitable or otherwise discretionary*.'" *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996)); *see also Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1079 (6th Cir. 1998) (Moore, J., concurring in part) (finding that "[w]hile *Quackenbush* involved *Burford* abstention, its reasoning applies with equal force to *Younger* abstention").

29

Because Plaintiff seeks damages as part of his relief, dismissal is inappropriate.  Instead, the Court will stay these proceedings until further order of the Court following final resolution of Plaintiff's criminal prosecution.

### Conclusion

Having reviewed Plaintiff's amended complaint under Rule 21 of the Federal Rules of Civil Procedure, the Court will drop as a party Defendant ICCF and dismiss without prejudice Plaintiff's First Amendment claims regarding mail interference at ICCF.  The Court will also deny Plaintiff's "motion to enjoin defendant to the above cause." (ECF No. 17.)

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Section 1983 and Section 1985 conspiracy claims, as well as his First Amendment retaliatory arrest claim against Defendants Kasul, Straubel, and Pieters, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Fourteenth Amendment selective prosecution claim against Defendant Butler; his Fourteenth Amendment equal protection claims against Defendants Kasul, Straubel, and Pieters; and his municipal liability claim against Ionia County remain in the case.

Pursuant to *Younger v. Harris*, the Court will abstain from resolving Plaintiff's claims pending resolution of the criminal proceedings that are the subject of Plaintiff's complaint.  This action will be stayed pending final resolution of the criminal proceedings.

An order consistent with this opinion will be entered.

Dated: March 17, 2022                              /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                U.S. Magistrate Judge

30